1
2
3
4
5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7   KEY TRONIC CORPORATION, a
    Washington corporation,                    No. 2:16-CV-0028-TOR
8
                            Plaintiff,          ORDER GRANTING DEFENDANT
9                                               STEEL TECHNOLOGIES' MOTION
         v.                                     TO DISMISS FOR LACK OF
10                                              PERSONAL JURISDICTION
    SMART TECHNOLOGIES ULC, a
11  Canadian corporation; et al.,
12                          Defendants.

13      BEFORE THE COURT is Defendant Steel Technologies de Mexico, S.A.,

14  de C.V.'s Motion to Dismiss (ECF No. 90).  This matter was submitted for

15  consideration without oral argument.  The Court has reviewed the completed

16  briefing and record and files herein, and is fully informed.

17                            **BACKGROUND**

18      Plaintiff Key Tronic Corporation ("Key Tronic") filed the instant action on

19  February 1, 2016.  ECF No. 1.  In its Third Amended Complaint (ECF No. 54) Key

20  Tronic asserts several causes of action against Defendant Steel Technologies de

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 1

Mexico, S.A. de C.V. ("Steel Tech Mexico"), arising out of a contractual dispute related to the supply of components to be used in the manufacture of electronic white boards. ECF No. 54 at ¶¶ 138-185. Steel Tech Mexico now moves the Court to dismiss the claims against it for lack of (1) personal jurisdiction and (2) service. ECF No. 90. Key Tronic requests the Court deny the motion or, in the alternative, allow for jurisdictional discovery. ECF NO. 105 at 29. For the reasons discussed below, the Court **GRANTS** Defendant Steel Tech Mexico's Motion to Dismiss (ECF No. 90) for lack of personal jurisdiction and **DENIES** Plaintiff's request for jurisdictional discovery.

## FACTS[1]

### *Steel Tech Mexico*

Steel Tech Mexico is a steel processing company with its principal place of business in Juarez, Mexico. ECF No. 90 at 4. The company was first formed and incorporated in Mexico in 1987 and has continued to operate its steel processing

---

[1] The facts are construed in a light most favorable to Plaintiff, as factual disputes are settled in favor of Plaintiff and uncontroverted allegations in the complaint are taken as true; but bare allegations are not accepted as true where the pleading is contradicted by affidavit. *See Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

wholly within the borders of Mexico. *Id.* Steel Tech Mexico is a Mexico corporation based in Mexico with no offices or operations in the United States. ECF No. 90 at 3. Steel Tech Mexico does not own any real property in Washington or the United States, it does not employ any individuals in Washington or the United States, it does not pay Washington or United States income taxes, and it is not registered to do business in either Washington or any other state in the United States. ECF No. 90 at 4.

### Key Tronic – Steel Tech Mexico Initial Meeting

Key Tronic has operations in both the United States and Mexico. Its Mexico operations are managed by its subsidiary, Key Tronic Juarez S.A. de C.V. ("Key Tronic Mexico").[2] ECF No. 90 at 5. The relationship between Key Tronic Mexico and Steel Tech Mexico arose in 2013 after Key Tronic, the parent corporation, purchased a manufacturing facility located in Juarez, Mexico from a company called Sabre Manufacturing S. de R.L. de C.V. ("Sabre"). Steel Tech Mexico had a prior business relationship with Sabre, and through this connection Steel Tech

---

[2]    Although Key Tronic, the parent corporation, is distinguished from Key Tronic Mexico, the subsidiary, the order does not distinguish between the two beyond this sub-section because the parties did not make the distinction clear; and, in any event, the distinction does not materially affect the remaining analysis.

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 3

Mexico and Key Tronic Mexico entered into business relations.[3]  ECF No. 90 at 5.

Before entering into negotiations, both parties entered into a non-disclosure

agreement ("NDA") that included a Washington choice of law provision.  ECF No.

105 at 5-6 (the NDA was to be "construed and interpreted in accordance with the

laws of the State of Washington without regard to its choice of law rules.")

### *Purchase Orders Underlying the Dispute*

In the fall of 2013, Key Tronic sent an email to Steel Tech Mexico's office

in Mexico requesting a quote for a new project involving electronic whiteboards

for one of Key Tronic's customers (the "SMART Project").  ECF No. 90 at 5.

Steel Tech Mexico responded and transmitted a quote via email back to Key

Tronic.  *Id*.  Key Tronic issued its first purchase order to Steel Tech Mexico for the

SMART project on December 18, 2013.  ECF No. 91-3 at 2.  In February of 2014,

Key Tronic submitted additional purchase orders to Steel Tech Mexico via email,

---

[3]      The parties dispute whether Steel Tech Mexico or Key Tronic initially

pursued the relationship, but this is irrelevant as both parties agree the relationship

first arose as a result of Steel Tech Mexico's prior relationship with Sabre

combined with Key Tronic's acquisition of the Sabre manufacturing plant in

Mexico.  *See* ECF Nos. 105 at 5; 118 at 4.  As such, this is not a contact with

Washington, regardless of who reached out first.

which Steel Tech Mexico accepted and began performing in Mexico.  ECF No. 90 at 6.  From February 2014 until the time Steel Tech Mexico and Key Tronic parted ways in the middle of 2015, Steel Tech Mexico continued to process the steel needed for the SMART Project exclusively in Mexico.  *Id.*

Between July 25, 2013 and July 21, 2015 Key Tronic and Steel Tech issued at least one hundred and twelve (112) purchase orders, each prepared and sent from Key Tronic's Spokane Valley, Washington offices to representatives at Steel Tech Mexico's Juarez facilities.  ECF No. 105 at 6.  Steel Tech would accept and confirm receipt of each purchase order by sending an email back to Spokane Valley, Washington.  ECF No. 105 at 6.  Steel Tech would then send invoices to the specified address in Washington.  ECF No. 105 at 7.  The purchase orders included an indemnification provision whereby Steel Tech Mexico was required to indemnify the Buyer, who was listed as "Barbara S. Kowalski."  *See, e.g.,* ECF No. 91-3.  The purchase order designated that the product was to be shipped to "Keytronic Juarez S.A. DE CV" in Juarez, Mexico.  *See, e.g., id.*; ECF No. 90 at 6.  Steel Tech Mexico made all such deliveries to this facility in Mexico, and never sent any steel to Key Tronic in Washington.  ECF 90 at 6.

### *Communication between Key Tronic and Steel Tech Mexico*

Throughout the duration of the SMART Project, Steel Tech Mexico and Key Tronic met in Juarez, Mexico at Steel Tech Mexico's facility for no less than forty

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 5

1    meetings, where the parties discussed various aspects of the SMART Project.  *Id.*

2    at 7.  During this time, Key Tronic and Steel Tech executed over 100 contracts (all

3    of which were drafted and prepared in Washington State and accepted by return

4    communication to Washington State) requiring Steel Tech to provide the steel for

5    Key Tronic's manufacture of interactive whiteboard products.  ECF No. 105 at 2.

6    In furtherance of these contracts, Steel Tech sent over 560 communications to Key

7    Tronic in Washington State—both from its corporate headquarters located in

8    Louisville, Kentucky and its manufacturing facilities in Juarez, Mexico.  ECF No.

9    105 at 8.

10            *Performance*

11            According to Steel Tech, "Steel Tech Mexico negotiated its agreement with

12   Key Tronic in Mexico, performed under its agreement in Mexico, and delivered its

13   goods to a Mexico facility owned by Key Tronic."  ECF No. 90 at 3; ECF No. 108

14   at 28 (Key Tronic purchase order showing "Ship To" address is "Keytronic Juarez

15   S.A. DE CV").  Key Tronic does not dispute this claim, *see generally* ECF No.

16   105, and the purchase orders support the assertion that Steel Tech Mexico

17   produced and delivered the products entirely in Mexico to a facility in Mexico.

18   *See* ECF No. 108 at 28.  However, according to Key Tronic, the "supply

19   relationship [between Key Tronic and Steel Tech Mexico] was solely managed

20   by—and all of Steel Tech's correspondence was directed to—Key Tronic's

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 6

1    corporate offices in Spokane Valley, Washington."  ECF No. 105 at 6.

2    Unfortunately, issues arose with the first and subsequent purchase orders regarding

3    the quality of the products being delivered, which is the subject matter of the

4    present suit.  *See* ECF No. 105 at 8.

5            ***Events after Dispute***

6            After issues between Key Tronic and Steel Tech Mexico arose, the parties

7    agreed to meet to discuss some of the issues.  ECF No. 90 at 7.  On two occasions

8    Steel Tech Mexico sent representatives to Spokane Washington to meet with Key

9    Tronic representatives.  ECF No. 105 at 16.  Importantly, according to Key Tronic,

10   Steel Tech Mexico's "breaches of purchase orders necessitated [the meetings] in

11   Washington to resolve supply issues."  ECF No. 105 at 8 (capitalization altered).

12                          **DISCUSSION**

13     **A. Personal Jurisdiction**

14          Personal jurisdiction is the power of the Court over the person.  *S.E.C. v.*

15   *Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) ("*In personam* jurisdiction, simply

16   stated, is the power of a court to enter judgment against a person.").  When

17   opposing a motion to dismiss for lack of personal jurisdiction under Federal Rule

18   of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that

19   jurisdiction is proper."  *Mavrix,* 647 F.3d at 1223 (citation omitted).

20

Determination of jurisdiction is reviewed *de novo*. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128 (9th Cir. 2003).

Where "the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix,* 647 F.3d at 1223 (citation omitted). Under this standard, plaintiff's "materials [must] demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Data Disc, Inc. v. Systems Technology Associates, Inc*., 557 F.2d 1280, 1285 (9th Cir. 1977) (citing *U. S. Ry. Equip. Co. v. Port Huron & Detroit R.R. Co*., 495 F.2d 1127, 1128 (7th Cir. 1974); and *O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir. 1971)). The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint must be taken as true. *Mavrix,* 647 F.3d at 1223 (citation omitted). The courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit[,]" *Data Disc,* 557 F.2d at 1284, but factual disputes are resolved in the plaintiff's favor, *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir. 2006). *Mavrix,* 647 F.3d at 1223.

Personal jurisdiction in federal courts is determined by the law of the State in which it sits. *Ranza v. Nike, Inc.,* 793 F.3d 1059, 1068 (9th Cir. 2015). Washington state law permits personal jurisdiction over defendants to the full

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 8

extent permitted by the Due Process Clause of the United States Constitution. *Shute v. Carnival Cruise Lines,* 113 Wash.2d 763, 766-67 (1989). Under the Due Process Clause, a court may exercise personal jurisdiction over a defendant only where "the defendant [has] certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Picot v. Weston,* 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)) (internal quotation marks and brackets omitted).

There are two types of personal jurisdiction: general and specific. General jurisdiction requires connections with the forum "so continuous and systematic as to render the foreign corporation essentially at home in the forum State[.]" *Ranza,* 793 F.3d at 1069.[4] Specific jurisdiction, in contrast, will lie "when a case arises out of or relates to the defendant's contacts with the forum." *Id.* at 1068 (internal quotation marks and brackets omitted) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984)).

The Ninth Circuit uses the following three-part test when determining if specific personal jurisdiction exists:

> (1) The non-resident defendant must . . . perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

---

[4]    General jurisdiction is not at issue. *See* ECF No. 105 at 13.

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 9

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Mavrix,* 647 F.3d at 1227–28 (emphasis in original).  The plaintiff has the burden of proving the first two prongs.  *CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1076 (9th Cir. 2011).  Once established, the burden shifts to the defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985)); *Picot*, 780 F.3d at 1211–12.  As discussed below, Key Tronic has not met its burden in establishing the first prong: purposeful availment.

### *Purposeful Availment*

As the Supreme Court emphasized in *Hanson v. Denckla,* "it is essential in each case that there be some act by which the defendant *purposefully avails itself* of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  357 U.S. 235, 253 (1958) (emphasis added).  The rationale is that a party who "purposely avails itself of the privilege of conducting activities within the forum state" must also "submit to the burdens of litigation in that forum as well."  *Hanson,* 357 U.S. at 253; *Burger King,* 471 U.S. at 476.  Where "the defendant *deliberately* has engaged in significant activities within a State . . . or has created continuing obligations between himself and

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 10

residents of the forum . . . he manifestly has availed himself of the privilege of conducting business there." *Burger King*, 471 U.S. at 476 (emphasis added).

The jurisdictional "inquiry is limited to examining contacts that proximately result from actions by the defendant *himself.*" *Burger King*, 471 U.S. at 475-76 (emphasis original). This is because:

> Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff. In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.

*Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (citation omitted). In other words, the defendant's relationship with the state must be analyzed with regard to the defendant's deliberate, purposeful, and affirmative contacts with the forum itself, not with persons residing there. *Walden v. Fiore*, 134 S.Ct. 1115, 1118 (2014) (citing *Int'l Shoe*, 326 U.S. at 319). Stated plainly, "[t]he plaintiff cannot be the only link between the defendant and the forum." *Id*. This limit on the Court's jurisdiction "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal citations and quotation marks omitted); *Picot*, 780 F.3d at 1212

1  (contacts that are merely "random, fortuitous, or attenuated" are not sufficient for

2  establishing jurisdiction).

3  The inquiry is further limited to examining contacts that occurred *prior* to

4  the event causing the litigation. *Steel v. United States,* 813 F.2d 1545, 1549 (9th

5  Cir. 1987); *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d

6  911, 913 (9th Cir. 1990).  This is because the Due Process Clause "requires that

7  individuals have fair warning that a particular activity may subject them to the

8  jurisdiction of a foreign sovereign," and this "fair warning" must arise "when the

9  events that gave rise to the suit occurred."  *Steel*, 813 F.2d at 1549 (internal

10  quotation marks and brackets omitted) (quoting *Burger King,* 471 U.S. at 472

11  (quoting *Shaffer v. Heitner,* 433 U.S. 186, 218 (1977) (Stevens, J., concurring))).

12  For claims sounding in contract, the "purposeful availment" analysis asks

13  whether a defendant has "purposefully availed himself of the privilege of

14  conducting activities within the forum State, thus invoking the benefits and

15  protections of its laws." *Picot*, 780 F.3d at 1212 (internal citations and brackets

16  omitted); *Hanson,* 357 U.S. at 253; *see, e.g., World–Wide Volkswagen Corp. v.*

17  *Woodson,* 444 U.S. 286, 295 (1980) (finding no personal jurisdiction in Oklahoma

18  where defendants "avail[ed] themselves of none of the privileges and benefits of

19  Oklahoma law").  "When a [business from one state] seeks out purchasers in other

20  states . . . and deals with them by out-of-state agents or by interstate mail and

telephone, [that business] is not entitled to force the customer to come to [its home state] to defend an action on the contract." *Roth*, 942 F.2d at 621–22 (original brackets omitted) (quoting *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica,* 614 F.2d 1247, 1252 (9th Cir. 1980) (quoting *Interdyne Co. v. SYS Computer Corp.,* 31 Cal.App.3d 508, 510, 107 Cal.Rptr. 499 (1973))).

A mere contractual relationship "with an out-of-state party *alone* [cannot] automatically establish sufficient minimum contacts in the other party's home forum[.]" *Burger King*, 471 U.S. at 478 (emphasis in original); *Picot*, 780 F.3d at 1212. Moreover, "the fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract." *Picot*, 780 F.3d at 1212–13. Rather, the defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir. 1990) (quoting *Sinatra v. Nat'l Enquirer, Inc.,* 854 F.2d 1191, 1195 (9th Cir. 1988)). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Hanson,* 357 U.S. at 253).

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 13

1    Importantly, personal jurisdiction does not turn on "mechanical tests" or on

2  "conceptualistic . . . theories of the place of contracting or of performance."

3  *Burger King*, 471 U.S. at 478 (citing *Int'l Shoe,* 326 U.S. at 319; and *Hoopeston*

4  *Canning Co. v. Cullen,* 318 U.S. 313, 316 (1943)).  Rather, the court must follow a

5  "highly realistic" approach that recognizes that a "contract" is "ordinarily but an

6  intermediate step serving to tie up prior business negotiations with future

7  consequences which themselves are the real object of the business transaction."  *Id.*

8  at 479 (citation omitted).  As a consequence "prior negotiations and contemplated

9  future consequences, along with the terms of the contract and the parties' actual

10  course of dealing . . . must be evaluated in determining whether the defendant

11  purposefully established minimum contacts within the forum."  *Id.*

12    Moreover, "a defendant's transitory presence will support jurisdiction only if

13  it was meaningful enough to 'create a substantial connection with the forum

14  State.'"  *Picot*, 780 F.3d at 1213 (quoting *Burger King,* 471 U.S. at 475).

15  However, for jurisdiction to attach, Defendants need not have "*physically* enter[ed]

16  the forum state."  *Burger King,* 471 U.S. at 476 (emphasis original).  It is enough if

17  the nonresident defendant intentionally transacted business in the forum state for a

18  court to find sufficient minimum contacts to subject it to personal jurisdiction.

19  *Logan Productions, Inc. v. Optibase, Inc.,* 103 F.3d 49, 53 (7th Cir. 1996); *see*

20  *Burger King,* 471 U.S. at 476 (In modern commercial life, "it is an inescapable fact

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 14

1    . . . that a substantial amount of commercial business is transacted solely by mail

2    and wire communications across state lines, thus obviating the need for physical

3    presence[.]").  Which party initiated contact is not determinative of personal

4    jurisdiction, but determining who "started it" is just "one helpful factor in the

5    jurisdictional equation." *Logan,* 103 F.3d at 53 (citation omitted)*.*

6         Here, there is nothing—or at the most very little—to suggest Steel Tech

7    Mexico availed itself of the protections and benefits of the laws of Washington, as

8    there appears to be no deliberate conduct on the part of Steel Tech Mexico to

9    associate itself with Washington.  In opposing Steel Tech Mexico's Motion to

10   Dismiss (ECF No. 90), Key Tronic points to several "contacts" to establish

11   purposeful availment.  *See* ECF No. 105 at 14-18.

12        Notably, some of the "contacts" on which Key Tronic relies are not

13   appropriate for this analysis, or at the most do little to establish sufficient contacts

14   between Steel Tech Mexico and Washington.  First, although the parties entered

15   into a NDA governed by Washington law, this "contact" is not germane to any

16   dispute at issue, and is thus not relevant for purposes of specific personal

17   jurisdiction. *Ranza,* 793 F.3d at 1068 (case must "arise out of or relate to"

18   contacts).  Even if relevant, this "contact" with Washington is minimal and merely

19   incidental to the overall goal of the parties in establishing a supply relationship.

20   Moreover, the purchase orders did not designate Washington law as the choice of

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 15

law, and that is the crux of the dispute, not the NDA.  As such, this is distinct from *Burger King*, where the contract underlying the suit contained the relevant choice of law provision, required a twenty-year term relationship, and also provided "that the franchise relationship is established in [Florida]."  471 U.S. at 465-66.  Second, Steel Tech Mexico's two visits to Washington—the only physical presence in Washington alleged—occurred after the dispute at hand arose (i.e. breach of contract and warranty), and is thus not a contact for purposes of personal jurisdiction.  *Steel,* 813 F.2d at 1549; ECF No. 105 at 8 (Key Tronic conceding that Steel Tech Mexico's "breaches of purchase order necessitated a meeting in Washington to resolve supply issues.") (capitalization altered).

Beside these, Key Tronic alleges little more than (1) e-mail communication between Steel Tech Mexico and Key Tronic employees in Washington, (2) purchase orders being drafted in Washington and sent to Mexico, and (3) Steel Tech Mexico's sending invoices to Washington.[5]  However, these so-called

---

[5]    Steel Tech Mexico also has a website displaying its capabilities in producing steel products, but Key Tronic does not present this as a contact to be considered for personal jurisdiction.  *See* ECF No. 105 at 14-18; www.steeltechnologies.com. While the existence of a website can be a relevant contact for purposes of jurisdiction, because the website at issue is merely passive and informational—as

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 16

1  "contacts" with Washington resulted from Key Tronic's choices and conduct—

2  namely, administering the sales and billing of Key Tronic Mexico in

3  Washington—rather than a deliberate choice on the part of Steel Tech Mexico.

4  *Burger King*, 471 U.S. at 475 (defendant must "deliberately" engage in conduct).

5  As a result, any contacts between Steel Tech Mexico and the state of Washington

6  were merely "random, fortuitous, [and] attenuated" and arose only because of Key

7  Tronic's "unilateral activity" in choosing to administer the billing and sales from

8  Washington, rather than Mexico, where the product is delivered.  *Burger King*, 471

9  U.S. at 475 (internal citations and quotation marks omitted).  Moreover, ordinarily

10 "use of the mails, telephone, or other international communications simply do not

11

12

13 compared to interactive—this potential "contact" carries little, if any, weight, as

14 the website is not "aimed" at Washington.  *See Pebble Beach*, 453 F.3d at 1156.

15 After all, the website does not directly sell any products, although potential

16 customers can submit a request for a quote for products.  *Id.*  Moreover, there is no

17 allegation that the dispute has anything to do with the website, so this is not

18 relevant for purposes of specific personal jurisdiction.  *Ranza,* 793 F.3d at 1068

19 (the case must "arise[] out of or relate[] to the defendant's contacts with the

20 forum.").

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 17

1    qualify as purposeful activity invoking the benefits and protection of the forum

2    state." *Roth*, 942 F.2d at 622 (brackets and citation omitted).

3        Finally, Key Tronic points to the terms of the purchase orders—specifically

4    the requirement that Steel Tech Mexico must indemnify the "buyer."  ECF No. 105

5    at 17.  Although Key Tronic takes the next step and claims Steel Tech Mexico

6    "agreed to indemnify a Washington corporation," this is not necessarily the case.

7    The "buyer" on the purchase order is listed as "Barbara S. Kowalski."

8    Presumably, Ms. Kowalski is acting in her representative capacity for Key Tronic,

9    but it is unclear whether she is acting on behalf of the parent or subsidiary

10   company.  Either way, this supposed "contact" is not a result of any intended act

11   on Steel Tech Mexico's part, and this contact with Washington is merely incidental

12   to the overall relationship, at best.  After all, the initial interest between the parties

13   revolved around the purchase of a manufacturing plant in Mexico, and only later

14   did Key Tronic send a purchase order in which it chose who to designate as the

15   buyer.

16       These "contacts" are similar to that in *Picot* to the extent both "grew

17   incidentally out of broader efforts" to perform under the respective agreements.

18   780 F.3d at 1213.  However, the "contacts" alleged here do not even rise to the

19   level found in *Picot*, as Steel Tech Mexico's travel to Mexico is not a "contact" to

20   be considered, in contrast to *Picot*, and all performance was undertaken in Mexico.

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 18

1    *Id.*; *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988)

2    (finding no purposeful availment, despite the contract being signed in the forum

3    state, because (1) the contract was negotiated—i.e. the substance of the

4    relationship was formed—outside the forum state, (2)  the contract made no

5    reference to the forum state, (3) no agents of the defendant performed or executed

6    any portion of the contract in the forum state, and (4) the defendants visit to the

7    forum state was only a result of plaintiff's invitation).   On the other hand, the facts

8    presented are distinct from *Roth* in that most of the performance—if not all—takes

9    place in Mexico rather than Washington.  942 F.2d at 622 ("the *future*

10   *consequences*" of the contract heavily impacted the forum state where "most of the

11   work . . . would have been performed.").

12        Importantly, Mexico was the gravitas of nearly every aspect of Steel Tech

13   Mexico's involvement with Key Tronic.  Steel Tech Mexico and Key Tronic first

14   became acquainted with each other as a result of Key Tronic purchasing a

15   manufacturing facility located in Mexico from a company whom Steel Tech

16   Mexico had previous business relations.  ECF No 105 at 5.  Before any purchase

17   orders were filled, Key Tronic inspected Steel Tech Mexico's facility located in

18   Mexico.  ECF No. 105 at 5.  Further, numerous meetings between the companies

19   were held in Mexico (over forty, although some are not relevant because they took

20   place after the dispute arose), and the only two visits to Washington by Steel Tech

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 19

Mexico occurred after the present dispute arose, and is thus not appropriate for consideration. *Steel,* 813 F.2d at 1549; ECF Nos. 90 at 7, 105 at 8. Moreover, all purchase orders were filled by Steel Tech Mexico delivering the product to Key Tronic Mexico's facility in Juarez. *See, e.g.,* ECF No. 91-3. As such, at no point did Steel Tech Mexico deliver any product to Key Tronic in Washington. ECF No. 118 at 11. Finally, Steel Tech Mexico's alleged breach occurred entirely in Mexico, where it allegedly failed to produce the relevant products to Key Tronic's standards. *Id*. As a result, the future consequences of the contract were entirely in Mexico—i.e. the "real object" of the agreement was production and delivery of products in Mexico. *Burger King*, 471 U.S. at 478. Under these facts, the contract does not have "a *substantial* connection with that State." *Id.* at 479 (emphasis original) (citing *Mcgee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

The reality of the relationship shows Steel Tech Mexico wanted to continue the business it had with Sabre before Key Tronic purchased the Sabre manufacturing facility. This facility was in Mexico. Steel Tech Mexico did not reach out to Key Tronic before it bought the Mexico facility. Steel Tech Mexico's connections to Washington are tenuous at best, as all communications to which Key Tronic points that relate to Washington were administrative in nature, whereas the initial interaction, inspection, performance, delivery, and alleged breach all arose in Mexico.

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 20

1    Key Tronic's position would allow a company to delegate its administrative

2 functions to a subsidiary or parent located in a state of its choice and thereby

3 manufacture personal jurisdiction over its business parties.  This is akin to creating

4 personal jurisdiction by looking to the Plaintiff's activities, and would mistakenly

5 allow the "plaintiff's contacts with the defendant and forum to drive the

6 jurisdictional analysis." *Walden,* 134 S.Ct. at 1125; *Picot*, 780 F.3d at 1213.  This

7 is the exact concern warned of in *Roth*:

> 8    When a [business from one state] seeks out purchasers in other states . . . and
>      deals with them by out-of-state agents or by interstate mail and telephone,
> 9    [that business] is not entitled to force the customer to come to [its home
>      state] to defend an action on the contract.

10

11 *Roth*, 942 F.2d at 621–22 (citations and original brackets omitted).

12    In sum, Steel Tech Mexico has not purposefully availed itself of the laws

13 and protections of the State of Washington, as Steel Tech Mexico's conduct was

14 not directed toward Washington and the only contacts with Washington was a

15 result of Key Tronic's choice to delegate the administrative functions to its office

16 in Washington.  Steel Tech Mexico's connection with Washington, at most, was

17 merely incidental to its interest in producing and delivering steel in Mexico.  The

18 remaining issues regarding jurisdiction are moot, as Key Tronic has failed to

19 establish the first prong required for personal jurisdiction.

20 //

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 21

**B. Jurisdictional Discovery**

Plaintiff Key Tronic requests, in the alternative to denying the motion to dismiss, the opportunity to perform jurisdictional discovery concerning Steel Tech Mexico's contacts with Washington State. ECF No. 105 at 29.

Jurisdictional discovery is not explicitly discussed in the Federal Rules of Civil Procedure, but is rather a judicial creation based on the broad principles of discovery and the courts' inherent power to establish their own jurisdiction. S.I. Strong, *Jurisdictional Discovery in United States Federal Courts*, 67 Wash. & Lee L. Rev. 489, 497 (2010) (citing *Gen. Indus. Co. v. Birmingham Sound Reproducers, Ltd.*, 26 F.R.D. 559, 561 (E.D.N.Y. 1961) (announcing that the court has jurisdiction to determine its own jurisdiction)). "If the pleadings and other submitted materials raise issues of credibility or disputed questions of fact with regard to jurisdiction, the district court has the discretion to take evidence at a preliminary hearing in order to resolve the contested issues." *Data Disc*, 557 F.2d at 1285 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure s 1373, at pp. 714-15 (1969); and 4 J. Moore, Federal Practice s 26.56(6), at p. 26-190 (1976)). In other words, "[d]iscovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (citing *Data Disc,* 557 F.2d at 1285 n.1 (citing

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 22

*Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 430 n.24 (9th Cir. 1977))). "Because jurisdictional discovery takes place prior to a determination that the court actually has jurisdiction over this dispute and this defendant, it is particularly important to avoid imposing undue burdens on a party who may not even be subject to the court's power." 67 Wash. & Lee L. Rev. at 492.

A grant or denial of jurisdictional discovery is reviewed for abuse of discretion. *Harris Rutsky*, 328 F.3d at 1135. The district court's refusal to provide such discovery, "will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Boschetto*, 539 F.3d at 1020. Courts do not abuse their discretion in denying a request for jurisdictional discovery where neither the complaint nor any supporting affidavit allege (material) facts that need additional support requiring discovery. *See id.*; *see also Butcher's Union Local No. 498 v. SDC Inv., Inc.,* 788 F.2d 535, 540 (9th Cir. 1986) (holding that district court did not abuse its discretion by refusing jurisdictional discovery where the plaintiffs "state only that they 'believe' that discovery will enable them to demonstrate sufficient California business contacts to establish the court's personal jurisdiction"). On the other hand, denying a request for jurisdictional discovery is an abuse of discretion where discovery on an issue raised in the pleadings "might well demonstrate facts sufficient to constitute a basis for jurisdiction." *See Harris Rutsky.*, 328 F.3d at

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 23

1135 (abuse of discretion to deny request for discovery to determine whether the alter ego or agency test are met).

Here, the facts as discussed are taken in the light most favorable to Key Tronic, and even under this lens, the issues underlying the Motion to Dismiss are disposed of completely, without any need of additional discovery. Moreover, it is not clear how additional discovery on any factual issue raised could have any bearing on the outcome of the Motion to Dismiss (ECF No. 90). Indeed, Key Tronic should have access to any information it may want to seek, as the only information relevant for specific personal jurisdiction would necessarily relate to the underlying dispute at issue. While discovery may lead to evidence Steel Tech Mexico has other contacts with Washington, these contacts would not be relevant for specific personal jurisdiction in the matter before the Court. Key Tronic has not attempted to state what information could be gained from discovery, and the Court does not see any benefit in allowing such, as the facts are sufficiently clear-cut to decide the issue of personal jurisdiction.

It is not the case that the "record is simply not sufficient[]" to determine any material issue underlying specific personal jurisdiction over Steel Tech Mexico. *Harris Rutsky*, 328 F.3d at 1135. Key Tronic's allegations are relatively numerous, supported by adequate evidence and, in the main, are not controverted by Steel Tech Mexico. Rather, Steel Tech Mexico mostly accepts Key Tronic's

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 24

allegations as true, but disagrees as to the legal conclusion.  In this situation,

allowing jurisdictional discovery is not proper.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

    1.  Defendant's Motion to Dismiss (ECF No. 90) is **GRANTED**.

    2.  Plaintiff's Request for Jurisdictional Discovery (ECF No. 108) is

      **DENIED**.

    The District Court Executive is directed to enter this Order and furnish

copies to counsel.

    **DATED** December 5, 2016.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING DEFENDANT STEEL TECHNOLOGIES' MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION ~ 25